UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TYRONE WILLIAMS, | |
| Plaintiff, | No. 17 C 3893 |
| v. | Judge Jorge L. Alonso |
| GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, and WEXFORD HEALTH SOURCES, INC. | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | |

Plaintiff's Memorandum of Law in Opposition to
Defendants' Fed. R. Civ. P. 56 Motion for Summary Judgment

## 1. INTRODUCTION

Plaintiff Tyrone Williams ("Plaintiff" or "Williams") brought this lawsuit to recover damages for the violation of his constitutional rights while incarcerated at Stateville Correctional Center ("Stateville") in Joliet, Illinois. He alleges that Defendants Wexford Health Sources, Inc. ("Wexford") and Dr. Saleh Obaisi, M.D. ("Dr. Obaisi")[1] violated his rights under 42 U.S.C. § 1983 by withholding and delaying improperly medical care he required. [ECF[2] No. 37.]

Defendants' Motion for Summary Judgment ("Motion") seeks summary judgment, in their favor and against Williams, on the deliberate indifference claim against Dr. Obaisi and on the *Monell*[3] claim against Wexford. [ECF Nos. 86-88.] Summary judgment is not warranted, however, because the record contains extensive testimony, medical records, and other documentary evidence raising genuine issues of material fact on whether Dr. Obaisi was deliberately indifferent to Williams' medical needs and on Wexford's cost-cutting policies that directly caused Williams' ineffective medical care. Accordingly, this court should deny summary judgment.

---

[1] After Saleh Obaisi, M.D.'s death, the Court substituted the Independent Executor, Ghaliah Obaisi, as a party defendant in place of Defendant Saleh Obaisi, M.D. [ECF Nos. 31, 35].
[2] "ECF" refers to the electronic court filings in this case.
[3] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

4828-1782-4433.2

## 2. STATEMENT OF FACTS

For a recitation of the facts, Plaintiff respectfully refers the Court to his Response to Defendant's Statement of Undisputed Facts, which Plaintiff filed in opposition to Defendant's Motion for Summary Judgment.

## 3. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The Seventh Circuit explained, "[W]hether the movant's evidence is more persuasive than the evidence of the non-movant is irrelevant. The only question is whether the evidence presented, reasonably construed in the light most favorable to the non-movant, creates a genuine dispute regarding any material fact precluding judgment as a matter of law." *United States v. Funds in the Amount of One Hundred Thousand One Hundred & Twenty Dollars*, 730 F.3d 711, 717 (7th Cir. 2013). *See also King v. Chapman*, 4 F. Supp. 3d 1017, 1021 (N.D. Ill. 2013) (when a material fact or set of facts yields competing, but reasonable, inferences, then there is a genuine issue that precludes summary judgment).

## 4. ELEMENTS OF ACTION

A claim of failure to provide medical care or attention contains five elements: (1) plaintiff had a serious medical need; (2) defendant was aware that plaintiff had a serious medical need or strongly suspected facts showing a strong likelihood that plaintiff had a seriously medical need but refused to confirm whether those facts were true; (3) defendant consciously failed to take reasonable measures to provide treatment for the serious medical need; (4) as a result of defendant's actions or inaction, plaintiff was harmed or subjected to a significant risk of harm; and (5) defendant acted under color of law. *See* Federal Civil Jury Instructions of the Seventh Circuit ("Instruction") 7.17. "Elements two and three encompass the concept of what the case law refers to as 'deliberate indifference.' The Committee has not included that term in the instructions because

most jurors will not be familiar with it and it can be described using ordinary language." Instruction 7.17 comment c.

## 5. ARGUMENT

To withstand a motion for summary judgment, a party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In relation to Dr. Obaisi, Defendants argue that Plaintiff failed to establish that he was deliberately indifferent [ECF No. 87 at 3]. In relation to Wexford, Defendants argue that Plaintiff failed to establish that the cause of Plaintiff's injury was caused by: an official policy Wexford's officers adopted and promulgated; a governmental practice or custom that, although no officially authorized, was widespread and well settled; or an official with final policy-making authority [ECF No. 87 at 10]. Defendants do not argue that plaintiff did not have a serious medical need or that Defendants did not act under color of law. Therefore, elements 1 and 5 are not at issue.

### A. Obaisi Was Deliberately Indifferent to Plaintiff's Medical Condition

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976). A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970. Defendants concede that Plaintiff had a serious medical need. Therefore, the subjective component of Defendants' deliberate indifference is not at issue.

To satisfy the subjective component, Plaintiff "must demonstrate that prison officials acted with a `sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834. Instruction 7.17, comment e refers Instruction 7.15, comment g for an explanation of this element as a general matter. Instruction 7.15, comment g provides that a plaintiff:

> must show both that the defendant acted culpably and that the defendant knew his action or inaction was culpable. *Farmer*, 511 U.S. at 842 (plaintiff must show 'that the official acted or

3

4828-1782-4433.2

failed to act despite his knowledge of a substantial risk of serious harm'); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (plaintiff must show 'a conscious, culpable refusal to prevent the harm'); *Rosario v. Brawn*, 670 F.3d 816, 821-22 (7th Cir. 2012) ('the standard …requires a showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks').

Instruction 7.17, comment e provides further that a plaintiff may prove this element "even if the defendant provided some care." "There is no bright-line test for determining whether a defendant violated this standard. Factors to be considered include the seriousness of the medical condition; the likelihood and imminence of further harm; and the ease and efficacy of providing treatment." *Id.* For a medical professional, "treatment may be blatantly inappropriate and thus amount to deliberate indifference when the medical professional knows that it is likely to aggravate the prisoner's condition or if it is clear that the treatment is not working." Instruction 7.17, comment f.

Here, Williams complained of pain in his shoulder for years and, during sick calls, sought medical care for the pain. Williams first complained of pain in his shoulder in April 2012. Dr. Obaisi was aware of Williams' complaints of shoulder pain but did little more than order the same course of treatment for three years, without any result. Dr. Obaisi repeatedly prescribed pain medication, including Tylenol and Ibuprofen, and administered two steroid (Depo-Medrol) injections [ECF No. 88, Ex. 1 at 43:19-44:17, 51:13-52:9, 59:15-60:8; Ex. 5 at p. 7].

In October 2015, after three and one-half years of fruitless treatment, Obaisi finally referred Williams to an outside physician, at which time an x-ray and MRI confirmed the obvious. [ECF No. 88, Ex. 1 at 86:21-87:1; Ex. 5 p. 27]. Williams saw Dr. Goldberg ("Goldberg") at UIC Medical Center. After reviewing the x-ray and MRI of his left shoulder, Goldberg diagnosed Williams with degenerative joint disease and a rotator cuff tear. [*Id.*]. Goldberg offered Williams surgery: reverse shoulder arthroplasty. [ECF No. 88, Ex. 1 at 87:11-88:10, 97:15-99:18; Ex. 5 at pp. 30-35]. After having to endure years of pain, with no relief or effective treatment, Williams underwent surgery.

Dr. Obaisi should have ordered an x-ray or MRI of Williams' shoulder after the initial treatment proved fruitless. His failure to do so likely exacerbated Williams' degenerative joint disease and either led to Williams' rotator cuff tear or caused it to worsen. By the time of Williams' surgery, his shoulder condition was so bad that he could not have a standard shoulder replacement (shoulder arthroplasty). Instead, the surgeon had to perform a reverse shoulder arthroplasty.

Defendants argue that Williams' non-compliance with physical therapy is partially to blame for Williams' pain. However, Dr. Obaisi repeatedly scheduled him for physical therapy with Dr. Jose Becerra ("Becerra"), but for days and times when Williams received family visitors at Stateville. [ECF No. 88, Ex. 1 at 90:6-92:20]. Williams puts great weight on the visits with his family and often chose to see them, which is understandable. Instead of working with Williams to choose a different time, however, Becerra discharged Williams from treatment entirely. Dr. Obaisi did nothing to help resolve this scheduling problem and ensure that Williams received physical therapy at a time that did not conflict with visits from his family. However, Plaintiff attended 87 percent of his physical therapy sessions with Becerra. [ECF No. 88, Ex. 5 at pp. 46, 50-55, 58-72, 75, and 77-89].

Additionally, Becerra callously judged Williams' condition beyond help. When Williams began his physical therapy with Becerra, Becerra indicated that he believed that physical therapy would not improve Williams' condition. [ECF No. 88, Ex. 7 at 14:5-15:5].

Evidence that Dr. Obaisi's deliberate indifference to Williams' necessary medical care exacerbated his injury and prolonged his pain and discomfort warrant a jury trial on the merits. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (a jury was to "determine whether a delay [in treatment] unnecessarily prolonged and exacerbated [inmate's] pain" and evidence of the delay was enough to survive summary judgment.)

    B.    **Wexford Monell Standard**

Wexford may be liable under Section 1983 if it has an official policy, pattern, or practice that caused a violation of William's constitutional rights. *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (*Monell* liability "applies in § 1983 claims brought against private companies acting under color of state law"). Liability

may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

The policy or practice may be overt, implicit, or a hands-off approach or a policy of inaction. *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378-80 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 109 (U.S. Oct. 2, 2017). *See also Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010), *cert. denied,* 562 U.S. 1061 (U.S. Nov. 29, 2010) ("[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."); *Sims v. Mulcahy,* 902 F.2d 524, 543 (7th Cir. 1990), *cert. denied,* 498 U.S. 897 (U.S. Oct. 9, 1990) ("[I]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable.")

In this case, genuine factual issues exist as to whether (1) Wexford maintained cost-cutting policies which caused medical care for Williams to be withheld or delayed; (2) Wexford maintained widespread practices of inaction, which caused medical care to be withheld or delayed; and (3) those policies or practices resulted in an unnecessary exacerbation of William's injury and prolonged his pain and discomfort. To survive summary judgment, however, Williams needs only to demonstrate that a jury could make a reasonable inference that Wexford had a widespread policy or practice that caused "a cognizable injury" to Williams., 452 F.3d 686, 692 (7th Cir. 2006). Here, a jury could reasonably infer that Wexford maintained cost-cutting policies and widespread practices of inaction that were either directly designed to, or had the effect of, delaying or diminishing Williams' medical care in order to increase its profit. Such delays can violate the Eighth Amendment. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008).

Further, courts have not adopted "bright-line rules defining a widespread custom or practice" but have held that the plaintiff must demonstrate that the occurrence was not a random event. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) *cert. denied,* 562 U.S. 1061 (U.S. Nov. 29, 2010). Plaintiffs may establish, for example, a series of bad acts creating an inference that policymakers were

6

deliberately indifferent to the known or obvious consequences of that practice or that they were aware of the risk created by the practice and failed to take appropriate steps to protect the plaintiff. *Id; Baker v. Wexford Health Sources, Inc.*, 118 F. Supp. 3d 985, 999 (N.D. Ill. 2015). Here, Defendants were aware of and had a widespread practice of tolerating, condoning, or encouraging delays in referrals and acted with deliberate indifferent to the consequences it would have for Williams.

### C. Williams Maintains His Claim For Punitive Damages Against The Estate

Williams maintains his claims for punitive damages. Contrary to Defendants' argument, Williams did not receive an "abundance of treatment," and Defendants did not prove that Dr. Obaisi and Wexford did not show reckless indifference to Williams' medical needs. *Schaub v. VonWald*, 638 F.3d 905-922-23 (8th Cir. 2011). As such, Williams maintains his claim for punitive damages.

## 6. CONCLUSION

Plaintiff Tyrone Williams has properly stated an Eighth Amendment claim, and, accordingly, the Court deny Defendants' Motion for Summary Judgment.

Dated: January 15, 2020                                              Respectfully submitted,

 

                             */s/ Edward Clancy*
                             Attorney for Plaintiff Tyrone Williams

Edward Clancy
Aviva Surugeon
Nixon Peabody LLP
70 W. Madison Street, Suite 3500
Chicago, Illinois 60610-4224
eclancy@nixonpeabody.com
asurugeon@nixonpeabody.com

## Certificate of Service

I hereby certify that on January 15, 2020, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court through ECF and served upon all counsel of record by filing the same with the CM/ECF system.

*/s/ Edward Clancy*
One of the Attorneys for Plaintiff